**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**MICHAEL PRINCE, JR.**                                              **PLAINTIFF**

**VS.**                                    **CASE NUMBER:  4:13cv165-SA-JMV**

**WASHINGTON COUNTY, MISSISSIPPI,**
**SHERIFF MILTON GASTON, in his Official Capacity,**
**LIEUTENANT MACK WHITE,**
**in his individual and official capacity,**
**DEPUTY MARVIN MARSHALL,**
**in his individual and official capacity, and**
**JOHN DOES 1-10**                                              **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      **COMES NOW**, Defendants, Washington County Mississippi, Sheriff Milton Gaston, in his

Official Capacity and Lieutenant Mack White and Deputy Marvin Marshall, in their individual and

official capacities, by and through counsel, and submit this Memorandum of Authorities in Support

of Defendants' Motion For Summary Judgment, and in support thereof would show as follows:

**INTRODUCTION**

A.     **Summary of the Facts.**

      • *The Night of March 16, 2012-March 17, 2012.*

      The genesis of this civil action arose late on the night of March 16, 2012.  A telephone call

from the Wayne Pearson Trailer Park at the intersection of Old Leland Road and Raceway Road in

Greenville, Mississippi, came into the dispatch center at the Washington County Sheriff's

Department ("WCSD").  The call complained of a disturbance outside the caller's trailer.  **Exh. B,**

**Depo. Marvin Marshall** at pgs. 16, 18-19.

Sgt. Jeffrey Parson and Deputy Marvin Marshall of the WCSD arrived on scene. *Id.* at 17. While they were investigating the disturbance and discussing the matter with the complainant and others at the park, they heard two gun shots fired in the vicinity of the trailer park. *Id.,* pg. 19; **Exh. D, Depo. Jeffrey Parson,** pg. 69. Parsons called over the radio that shot were fired. Parson, pg. 71-72; Marshall at 22. Lieutenant Mack White was miles away from the Pearson Trailer Park, and when the call came over the radio that shots had been fired in the vicinity of officers, he proceeded to the trailer park. **Exh. A, Depo. Mack White,** pg. 58. In the meantime, Pearson and Marshall began to investigate and walked to the east end of the trailer park. Marshall, pg. 21; Parson, pg. 71. They had learned that Michael Prince, who was the suspect accused by the original complainant to have caused the disturbance, had fled the scene and ran into a wooded area immediately south of the trailer park, but separated by a fence. Parson, pg. 45; Marshall, pg. 25. Within minutes, White arrived on scene and made contact with the other officers by radio. Marshall, pg. 24. Lt. White testified that he was advised by Parson that someone had run off into the woods and started firing a gun. M. White, pg. 59. Lt. White told Parsons that he was going to proceed into the woods from the east to attempt to apprehend the subject. M. White, pg. 53, 68. While Lt. White was searching the woods from east to west, Parson stayed on the north side of the fence directing White where Parson could hear the subject moving. M. White, pg. 64, 68; Marshall 27; Parson, pg. 73. While doing so, however, Parson heard another disturbance at the initial complainant's trailer, so he proceeded back to the other side of the trailers. Parson, pg. 51, 73. Marshall also returned to the area of the trailer where the disturbance had arisen. Marshall, pg. 23.

In the meantime, White was proceeding through the woods which he described as extremely dense with vines and tree branches. M. White, pg. 53. White testified that he was the lone officer in the woods. *Id.,* pg. 62. He had his radio in one hand and his flashlight in the other. *Id.*, pg. 67.

At times, White could hear movement in the woods, and eventually saw the Plaintiff as he approached an extremely dense area of roots, vines and other debris. *Id.,* pg. 53, 54, 72. Plaintiff was without a shirt lying face down on the ground. *Id.* White testified he jumped on the subject's back and told him to "Don't move." *Id.,* pg. 53. Rather than obey Lt. White's command, White testified Prince got up and tried to run, but his legs got tangled up in some vines. *Id.* At that point, Lt. White tackled Prince and when he did so, he lost his flashlight and radio. *Id.* Even after being tackled, Prince continued to try to run away. *Id.,* pg. 54. During the struggle, Prince got on his feet while White was still on the ground. *Id.* Lt. White got up and pushed Prince down again and got on top of him. *Id.* He put his knee in Prince's back and held him at gunpoint. *Id.* Prince continued to resist, so White holstered his gun and began yelling for officer assistance since his radio was lost in the struggle. *Id.* Lt. White yelled at Prince to "Stop resisting" and finally additional deputies arrived to assist in detaining Prince. *Id.* Lt. White eventually found his radio, but not his flashlight. *Id*. Lt. White denies ever hitting Prince in the face with the flashlight. *Id.,* pg. 73.

After Prince was taken into custody, he was walked out of the woods and immediately placed in a patrol car and taken to the WCSD on Alexander Street in Greenville by another deputy. *Id.,* pg. 80.[1] When Lt. White arrived at the WCSD, he noticed Prince had a swollen eye. *Id.,* pg. 82-83. Lt. White charged Prince and took him to the Greenville Police Department because Prince had outstanding warrants in Greenville, too. *Id.,* pg. 83. From there, Lt. White took Prince to the Washington County Regional Correctional Facility ("WCRCF"), but the jailer refused to book Prince into the jail because it appeared he needed medical attention. *Id.,* pg. 83. Lt. White transported

---

[1]The first time Parsons saw Prince that night was when Lt. White requested his handcuffs to place on Prince after White had Prince detained. Parson, pg. 57-59. The first time Marshall saw Prince that night, Prince was being put into another deputy's car. Marshall, pg. 32.

Prince back to the WCSD and arranged for an ambulance to meet him there. *Id.* Prince refused any type of medical treatment from the paramedics, so Lt. White took Prince back to the WCRCF where he was booked in on the misdemeanor charges of public drunk, disorderly conduct-disturbing the peace and resisting arrest. *Id.,* pg. 84. A few hours later, the supervisor at the WCRCF called Lt. White to say that Prince wanted to go to the hospital, so Lt. White arranged for Deputy Marshall to transport Prince to the hospital, Delta Regional Medical Center. *Id.* A few hours later, Marshall called Lt. White to inform him the doctor was considering transferring Prince to a hospital in Jackson, Mississippi. *Id.* Lt. White called his superior, Percy Miles, who told Lt. White to release Prince on his own recognizance. *Id.* Prince was taken back to the WCRCF and released.

Prince's deposition version of events that evening vary to some degree, but not in a material way which would preclude summary judgment. According to Prince, he and some friends were outside that night having drinks when they heard gunshots. **Exh. E, Depo. Michael Prince, Jr.,** pg. 12. According to Prince, he had not been in any type of altercation that night. *Id.,* pg. 14. Prince said the manager of the park ("the landlord lady"-Bobbie White) rode through the park and told everyone to go in, that she was about to call the deputies. *Id.,* pgs. 12, 16, 19. Prince said initially he and his girlfriend went inside the trailer, but eventually came back outside when the deputies arrived. *Id.,* pg. 13. Prince said he had "a little ticket for the city, and I didn't want to get arrested or nothing," so he fled the scene. *Id.,* pg. 13-14. Prince went into the woods and hid by laying down on his stomach in some brush. *Id.,* pg. 23, 25. Prince said the deputies were looking for him was because they saw him run. *Id.,* pg. 26.

According to Prince, he could hear the deputies approach through the woods as he was lying down. *Id.*, pg. 30. He was being still so no one could find him. *Id.,* pg. 34. He remembers Lt. White getting on his back and hitting him with a flashlight. *Id.,* pgs. 31, 46. Prince described this

as happening instantaneously, or "at the same time." *Id.*, pg. 46. Then, Prince remembers Lt. White yelling for him to "stop resisting," but denies that he was resisting. *Id.*, pgs. 32-33. Lt. White eventually got the handcuffs on Prince and he was taken to the police car. *Id.*, pg. 63. Lt. White transported Prince to the sheriff's department. *Id.*, pg. 65. While getting booked in at the WCSD, Prince remembers paramedics coming to the department, but according to Prince, the paramedics were "talking bad and nasty to me," so he refused to go with them and told the deputy to go ahead and take him to the WCRCF. *Id.*, pgs. 69-71. Also, according to Prince, he never went to the Greenville Police Department to get booked in before being transported to the WCRCF. *Id.*, pgs. 66-67. Regardless, Prince acknowledged that before the jailer at the WCRCF would accept him, they required that he be given medical treatment. *Id.*, pgs. 67-68. He remembers a deputy taking him to Delta Regional Medical Center. *Id.*, pg. 68.

According to Prince, the doctors at the hospital said he needed to be taken to Jackson; but, instead, the deputy took him back to the WCRCF and released him. *Id.*, pgs. 75-76. Also, according to Prince, he went to see an eye specialist who told him "something about my little pupil thing was sideways or something. I don't remember." *Id.*, pg. 78. Now, if he looks at a television or screen for an extended period of time, or if he looks at a bright light, his eye hurts, but he doesn't know, and has not been told, if that was caused by the injury. *Id.*, pgs. 78-79. He doesn't know whether his vision has been impaired. *Id.*, pg. 81. He testified that he now sees the same as he could before. *Id.*, pg. 82. After this incident, while he was eating something hard, a piece of a took chipped off. *Id.*, pgs. 84-87. A week later, Prince said he went to see his family dentist, Dr. Higgins, who supposedly told him there was nothing she could do for him.[2] *Id.*, pg. 85.

---

[2]When Defendants subpoenaed her records, they received correspondence from her stating she has no record of seeing Prince since August 7, 2003. *See* **Exhibit H**.

After establishing other instances of Prince fleeing from the commands of law enforcement, Prince's *modus operandi* can be summed up in his own words:

Q        Do you make it a habit to run from the police?

A        I don't just make it no habit.  But I'm not the type to just go to the police and be like, okay, take me, here I am, lock me up.  I'm not going to just let them get me like that.

Q        Okay.  So if you feel like you're about to go to jail and an officer gives you an order to stop –

A        Yeah, if I can get away, I'm going to try to get away.

*Id.,* pg. 113.

Bobbie White was the manager of the Wayne Pearson Trailer Park for several years before the evening of March 16, 2012.  On that night, she testified she was at home when she heard two gun shots.  **Exh. G, Depo. Bobbie White,** pg. 41.  She walked across the street to see what was happening.  *Id.*  There were multiple cars from the WCSD at the scene when she got there.  *Id.*  Ms. White did not drive through the trailer park as testified to by Prince.  *Id.*, pg. 42.  She did not call the WCSD.  *Id.,* pgs. 41, 45.  After a few minutes, Bobbie White testified that she looked over her shoulder and saw Prince being put into a police car.  *Id.*, pgs. 46-48.  He looked to have been crying and saw blood coming from his nose or mouth.  *Id.*, pg. 22.  When she saw him at that time, he did not have a shirt on.  *Id.*, pg. 23.  Later, after Prince had been put in the car, his parents arrived on the scene. *Id.*, pg. 52.  Bobbie White testified that Michael Prince and another resident (identified as "Steven" by B. White) had been in an ongoing feud for several weeks.  *Id.*, pgs. 44-45.  The genesis of that feud were statements made that Prince had broken into Steven's trailer and stole his television.  *Id.,* pgs. 31-32.  On the night in question, Bobbie White denied Prince's version that after the gunshots were heard that she drove through the trailer park and told them to go inside because

she was going to call the WCSD. *Id.,* pgs. 42-43.

> • *The Policies and Training of the Washington County Sheriff's Department.*

Sheriff Milton Gaston was first elected in 2005. **Exh. C, Depo. Milton Gaston,** pg. 5. When he was elected Sheriff, and for the next six years until 2010, the deputies at the WCSD were governed by the Washington County Sheriff's Department Code of Conduct. *Id.,* pg. 20; **Exh. F, specifically Exhibit 5 to Depositions**, WCM-001-091. The Code of Conduct in force through 2010 contained a separate, stand-alone, Use of Force policy. *Id.*, Chapter 12, WCM-047-050. This document was in force when Lt. Mack White was hired in 2003, and remained in force until June, 2010. Gaston, pg. 20.

In 2010, the WCSD adopted the Washington County Sheriff Department Law Enforcement Policy and Procedures. *Id.* This manual, together with periodic memoranda and such, is the document governing WCSD employees subsequent to the date of passage. *See* **Exhibit F, specifically Exhibit 6 to Depositions**, WCM-0092-0278; Gaston, pg. 23-24. After this lawsuit was filed, it was discovered by Sheriff Gaston for the first time that a stand-alone Use of Force policy was inadvertently omitted from the policies adopted in June, 2010. Gaston, pg. 47-48. That is not to say, however, that these new policies are silent to the appropriate use of force. For instance, and as only one example, the policies adopt the *Nine Principles of Policing*, with number 6 stating that the "Sheriff use physical force to the extent necessary to secure observance of the law or to restore order only when the exercise of persuasion, advice and warning is found to be insufficient." *See* Exhibit F (Exhibit 6 to Depositions), WCM-240.

The fact that no stand-alone Use of Force policy was contained within the new policy manual does not mean that deputies with the WCSD are not trained on the appropriate use of force. All deputies for the WCSD are required to undergo training at the law enforcement academy and be

certified pursuant to MISS. CODE ANN. § 45–6–11 (requiring certification and other qualifications as set by Board on Law Enforcement Officer Standards and Training for law enforcement officer employment). Gaston, pgs. 26-30. Once hired by the WCSD, most deputies participate in on-the-job field training and departmental meetings wherein use of force has been discussed. *Id.* Some deputies, and in particular Lt. Mack White, have attended various law enforcement-related conferences and seminars. M. White, pg. 21-24; Gaston, pg. 45 For instance, White has attended conferences with the Department of Homeland Security, a conference for Mastering Leadership Skills for First Line Supervisors put on by the Public Agency Training Council, Course Instruction on use of Oleoresing Capsicum Aerosol Spray, and PPCT Defensive Tactics System Basic Certification to name a few. M. White, pgs. 22-24, 103-104. Additionally, Mack White has experience with the U. S. Marshall Service through a Special Deputation. M. White, pg. 9.

**B.    Summary of the Allegations.**

The Complaint brings actions arising under 42 U.S.C. § 1983 and Mississippi state law claims. *See* Complaint [Doc. # 2]. The Complaint contains nine separate counts as follows:

| | |
|---|---|
| **Count One** – | Assault and Battery. These claims have been dismissed. *See* Agreed Order on Defendants' Partial Motion to Dismiss. [Doc. # 21]. |
| **Count Two** – | Negligent Handling of Plaintiff's Person. |
| **Count Three** – | Gross Negligence and Reckless Acts. |
| **Count Four** – | Claims arising under 42 U.S.C. § 1983 for deprivation of constitutional rights under the Fourth, Eighth and due process clause of the Fourteenth Amendment. |
| **Count Five** – | Claims arising under the Mississippi Constitution. |
| **Count Six** – | Negligent Hiring and Training. |
| **Count Seven** – | Excessive and Unnecessary Use of Force in violation of the Fourth and Eighth Amendments |

**Count Eight** – Claims arising under 42 U.S.C. § 1983 for deprivation of unspecified constitutional rights.

**Count Nine** – Claims arising under 42 U.S.C. § 1983 for failure to provide adequate medical assistance.

For the reasons set forth below, there are no genuine issues of material fact which would preclude summary judgment and all claims against all Defendants should be dismissed as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A non-movant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted)(emphasis added). A party is entitled to summary judgment when the "evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law," rendering "all other contested issues of fact" immaterial. *Wamble v. County of Jones*, 2012 WL 2088820 (S.D. Miss. June 8, 2012)(citing *Topalian v. Ehrman*, 924 F.2d 1125, 1138 (5th Cir. 1992)).

## ARGUMENT AND AUTHORITIES

1.      **Official Capacity Claims.**

First, as a matter of housekeeping, it should be noted that the Complaint is specific that the individually named defendants were "acting within the course and scope of their employment" at all

times.  *See* Complaint, ¶ 5, 6, 13.  There is no need in naming the employees in their official capacity since a suit against an employee in their official capacity is "treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(citing *Brandon v. Holt*, 469 U.S, 464, 471-72, 105 S.Ct. 873, 83 L.Ed. 2d 878 (1985)).  Because Washington County is already a party, naming the others in their official capacity is duplicative.

      2.      **Claims of Negligence, Gross Negligence and Reckless Acts.**

In Count Two of the Complaint, Plaintiff alleges a cause of action against Defendants "for their negligent and wrongful acts or omissions, including the negligent handling of the Plaintiff's person."  *See* Complaint, ¶27.  In Count Three, Plaintiff alleges that the cause of action against Defendants "for their grossly negligent and reckless acts, including but not limited to striking Prince on the head, mouth and face with a flashlight."   *See* Complaint, ¶30.  Presumably, the actions alleged in Counts Two and Three are state law claims.  Accordingly, because the Defendants are governmental defendants, such claims would be governed by Miss. Code Ann. § 11-46-1 *et seq*, known as the Mississippi Tort Claims Act ("MTCA").

The MTCA provides exemption for liability to all Defendants for the incident in question. Miss. Code Ann. § 11-46-9 states, in part, as follows:

> (1)     A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (c)     Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to ***police*** or fire protections unless the employee acted in reckless disregard to the safety and well-being of any person not engaged in criminal activity at the time of injury.

Initially, it should be noted that there is no evidence that Prince's injuries were caused by reckless conduct of Lt. Mack White, or that Lt. White acted in reckless disregard of the well being of Prince. Prince admits fleeing from law enforcement to avoid a sure arrest for outstanding warrants, which in turn caused Lt. White to have to encounter and apprehend him in a dark, densely wooded area. Further, and more importantly, Prince cannot claim entitlement to the reckless disregard exclusion because he was engaged in criminal activity, *i.e.* resisting arrest by fleeing and hiding from law enforcement, at the time of the injury.[3] Accordingly, by virtue of the MTCA, the Defendants are immune from the claims arising under state law asserted in Counts Two and Three.

**3.      Claims Arising Under 42 U.S.C. § 1983**

      **a.      Claims Against Mack White and Marvin Marshall.**

Rather than re-invent the wheel, Defendants will quote from this Court regarding claims under § 1983 and the Defendants' defense of qualified immunity:

> Liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. 42 U.S.C. § 1983. Section 1983 does not create substantive rights; rather, it merely provides a remedy for deprivations of rights established elsewhere. *City of Okla. City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). To bring an action within the purview of Section 1983, a claimant must first identify a protected life, liberty, or property interest, and then prove that government action resulted in a deprivation of that interest. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 927 (5th Cir.1988); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir.1984).[8][9][10] 'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal quotations omitted). "[Q]ualified immunity is an immunity from suit rather than a mere

---

[3]*See* MISS. CODE. ANN. § 97-35-7.

defense to liability." Id., 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (internal quotations omitted). Once a government official asserts qualified immunity, it is the plaintiff's burden to prove that the official is not entitled to it. Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir.2005).

In evaluating qualified immunity, the Court employs a two-step process. *Cantrell v. City of Murphy*, 666 F.3d 911, 922 (5th Cir.2012), cert. denied, —— U.S. ——, 133 S.Ct. 119, 184 L.Ed.2d 25 (2012). The Court must determine (1) whether the plaintiff has alleged a violation of a clearly established constitutional right and (2) whether the government official's conduct was objectively reasonable under the law at the time of the incident. *Michalik* at 257–58. 'To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' *Reichle v. Howards*, —— U.S. ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotations omitted). 'Thus, the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

*Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *3.

In the instant case, Prince brings suit under § 1983 alleging constitutional violations under the Fourth, Eighth and Due Process Clause of the Fourteenth Amendments to the U. S. Constitution, as well as unspecified violations of the Mississippi and U. S. Constitutions. The gravamen of the Complaint involves injuries to Prince in the process of an *arrest*, *before* the incidents of arrest had been completed not while he was detained or incarcerated by the WCSD. Prince alleges that all individually named defendants were "[a]cting within the course and scope of their employment" when the incident occurred. *See* Complaint, ¶ 13. As to the individual Defendants, Mack White and Marvin Marshall, all claims against them should be dismissed on account of qualified immunity.

### i.       Fourth Amendment Claims.

The law is clear that claims of excessive force in the course of making an arrest are to be analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

> '[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable.' Bush v. Strain, 513 F.3d 492, 500–01 (5th Cir.2008) (citing Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir.2004)). 'The objective reasonableness of the force ... depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible.' Id. (citing Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir.1996)). 'Specifically, the court should consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' Id. (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443). Importantly, an officer's subjective intent is irrelevant. Graham, 490 U.S. at 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 ('An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.').

*Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *7.

The constitutional question, therefore, is whether Mack White's conduct on March 16, 2012, was "objectively reasonable."[4] This inquiry is fact intensive and depends on "the facts and circumstances of each particular case." *Graham v. Conner,* 490 U.S. 386, 396 (1989). Factors to be considered include "the severity of the crime at issue, whether the suspect poses and immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting

---

[4]There is absolutely no evidence that Marvin Marshall ever used any level of force on Prince.

to evade arrest by flight." *Graham*, 490 U.S. at 396. This determination is a question of law. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)(citing *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998)). Defendants submit that giving Prince the benefit of the doubt and assuming it to be true that Lt. White did in fact strike him with a flashlight in the process of gaining control over his person, the acts were not objectively unreasonable in light of the situation faced by Lt. White, *i.e.* that the suspect had fled into the woods behind a crowded trailer park and began firing shots; that the woods were dark and dense and the fact that Prince was struggling to avoid apprehension. Prince's claims that he never did resisted arrest are belied by the very scene in the woods that night. The fact that he fled alone contradicts such a position. The fact that he fled into the dark woods, took off his shirt, and laid down under brush and remained still to avoid detection contradicts such a position. The fact that his admitted position is that he will flee a lawful command every opportunity he gets to avoid arrest contradicts such a position. That Prince fled, hid from police and said he will run every opportunity he gets are all undisputed facts.

Because the conduct of White was objectively reasonable, he is protected from liability and summary judgment should be granted.

### ii.    Eighth Amendment Claims.

In the Complaint, Plaintiff alleges that Defendants violated Prince's constitutional rights under the Eighth Amendment by "treating Michael Prince in a cruel and unusual manner." *See* Complaint, ¶ 17. The Eighth Amendment to the U. S. Constitution protects citizens from "cruel and unusual punishments," but that protection is afforded to claims of punishment after conviction of a crime. "The Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable where, as here, the detention of the complainant did not directly result from the conviction of a crime." *Whiting v. Tunica County*, 222 F.Supp.2d 809, 822 (N.D. Miss. 2002)(reversed on other

grounds), citing *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir.2000); *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir.1986) cert. denied 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495. Because the Eighth Amendment does not provide protection to Prince with respect to "treating [him] in an cruel and unusual manner" during an apprehension, this claim cannot serve as the federal right giving Prince access to § 1983. To the extent the Eighth Amendment claims involve the denial or delay in providing medical treatment to him, the claim will be addressed *infra*.

### iii. Due Process Clause of the Fourteenth Amendment.

The Due Process provision of the Fourteenth Amendment affords protection against unlawful search and seizure. Plaintiff alleges that he was "beaten and abused without probable cause or provocation." *See* Complaint, ¶ 21. Of course, that allegation is contradicted by Prince's own testimony. The undisputed evidence is that shots were fired on the night of March 16, 2012. Prince claims the shots had been fired by Steven Johnson, albeit his source of information is rank hearsay. Prince, pg. 12. Defendant Marshall submits that he was at the trailer park interviewing the complainant and heard the shots. Marshall, pg. 19. Sgt. Parsons was with Marshall and testified that he was interviewing Steven Johnson when he heard the shots (eliminating Johnson as the shooter). Parson, pg. 70-71. Bobbie White, manager of the trailer park, heard the shots from her trailer across the street. A witness by the name of Tekoah Arrington gave a statement that a person fitting the description of Michael Prince appeared to hide a gun under a trailer. M. White, pg. 109-111; Exhibit F (Exhibit 9 to Depositions). Bobbie White told deputies that night that Ms. Arrington had seen someone place what appeared to be a gun under a trailer. B. White, pg. 27-28, 53-54, 57-58.

Michael Prince, the subject of the complaint, was the only person in the trailer park to flee when law enforcement arrived. That officers were dispatched to a trailer park for a dispute involving Prince, the undisputed fact that gun shots were fired in the vicinity of the trailer park, and that Prince

fled from the scene is more than sufficient to satisfy probable cause to make an arrest without a warrant. "The Supreme Court has found as a matter of law that exigent circumstances will justify a warrantless search or seizure in many circumstances: when there is probable cause for the search or seizure and there is an imminent danger that someone will destroy evidence, . . ., when the safety of law enforcement officers or the general public is threatened, . . . , or when a suspect is likely to flee before the officer can obtain a warrant . . ." *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085 (5th Cir. 1997), Citing *Cupp v. Murphy,* 412 U.S. 291, 294–96, 93 S.Ct. 2000, 2003–04, 36 L.Ed.2d 900 (1973), *Warden v. Hayden*, 387 U.S. 294, 298–99 (1967) and *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85 (1990). That Lt. Mack White did not personally hear the gun shots, but instead responded to the radio call for backup and relied upon the statements of Jeffrey Parsons that it was believed that the suspect who fired the shots ran into the woods, is more than sufficient to satisfy the probable cause necessary to make a lawful arrest. *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *5, citing *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) and *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997).

This Court has previously noted that the Fifth Circuit has said the protection afforded by the Due Process Clause of the Fourteenth Amendment is afforded to pretrial detainees "unlike an arrestee." *Estate of Manus v. Webster County, Mississippi*, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at * 9, citing *Bros. v. Klevenhagen*, 28 F.3d 452, 4555-56 (Fth Cir. 1994)(citing *Valencia v. Wiggins*, 981 F.2d 1440, 1443-45 (5th Cir. 1993), cert. *denied*, 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993). Prince was an arrestee, not a detainee, when his injuries allegedly occurred. That being said, Defendants acknowledge there has been confusion on whether claims of excessive force in making an arrest is more appropriately analyzed under the Fourth Amendment or Fourteenth

Amendment and that there has been an overlap in standards. Defendants submit that in the instant matter, the claim of excessive force is more appropriately analyzed under the Fourth Amendment standard of "objective reasonableness" and refer to the analysis above.

As set forth above, the conduct of Lt. White and Deputy Marshall was "objectively reasonable," cloaking them both with a qualified immunity against civil liability. It cannot be said that either of these officers were "plainly incompetent or . . . knowingly violate[d] the law," so they are protected by the immunity. *Estate of Manus, et al v. Webster County, Mississippi, et al*, --- F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *3, citing *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Of course, Deputy Marshall was involved in neither the apprehension nor arrest, so there cannot be an issue of fact precluding dismissal as to him.

**b.     Municipal Liability Against Washington County, Mississippi and Sheriff Gaston, in his Official Capacity ("County Defendants").**

In order to succeed in a claim against the County Defendants arising under § 1983, Prince "must identify (1) an official policy (or custom), of which (2) the policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *20 (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Additionally, "to show that a policy is the 'moving force' behind a constitutional violation, 'a plaintiff must show direct causation, i.e., that there was a 'direct causal link' between the policy and the violation." *Estate of Manus, et al v. Webster County, Mississippi, et al*, --- F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *20 (citing *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). The connection must be "more than a mere 'but for' coupling

between cause and effect." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *20.

In the instant case, Plaintiff alleges that "[t]he failure of the Washington County Sheriff's Office to properly train and supervise its deputies is the proximate cause of Plaintiff's injuries. The Office's use of force policy and civil rights policy are also proximate causes of Plaintiff's injuries." *See* Complaint, ¶ 20. Count Six of the Complaint alleges injuries resulted from "carelessness . . . in hiring and failing to properly train Defendants White, Marshall and John Does, 1-10." *See* Complaint, ¶ 41. Defendants will address the negligent hiring, training and supervision claims, then address the policy allegations.

i.    **Negligent Hiring and Failure to Train and Supervise**.

When a plaintiff alleges a claim for failure to train or supervise, "the plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between a failure to train or supervise and the violation of plaintiff's constitutional rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Troy Davis . City of Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (*quoting* Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cr. 1998). There is absolutely no evidence to suggest liability on the grounds of negligent hiring and failure to train or supervise. Lt. Mack White, who is the *only* officer involved in the physical apprehension of Prince and the only office alleged to have used excessive force, was hired in 2003 *before* Sheriff Gaston took office. In the approximate nine (9) years he has moved up the ranks within the WCSD, Lt. White has never been disciplined or much less even alleged to have improperly used force against any arrestee. As all other deputies, White was trained at the Mississippi Law Enforcement Academy, received his certification, and also has received a variety of training over the years. He was previously selected for special deputation with the U. S. Marshall

Service. As to Defendant Marvin Marshall, there is no evidence that he took any action which was improper and it is questionable as to why he was even named in the suit. "A pattern of similar constitutional violations is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at \*17; see also, *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003); *Pinedav v. City of Houston,* 291 F3d 325, 334-35 (5th Cir. 2010); *Davis v. City of N. Richland Hills,* 406 F.3d 375, 383 n. 34 (5th Cir. 2005); *Lewis v. Pugh*, 289 F. App'x 767, 772 (5th Cir. 2008); *Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001).

To the extent that Plaintiff seeks to impose supervisory liability upon Sheriff Milton Gaston, in his official capacity, he must show "(1) the [supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at \*17 (citing *City of Canton*, 489 U.S. at 378, 109 S.Ct. 1197, 103 L.Ed.2d 412. "Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at \*17 (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir.2009) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir.2005)). "Further, '[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at \*17 (citing *Connick*, ––– U.S. ––––, 131 S.Ct. at 1360, 179 L.Ed.2d 417 (citing *Bd. of Cnty. Comm'rs of Bryan*

*Cnty. v. Brown,* 520 U.S. at 409, 117 S.Ct. 1382, 137 L.Ed.2d 626). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights ." *Id.*

In the case *sub judice*, Prince has not established any evidence, much less pattern, of constitutional violations by any Defendant in this action. The record is replete with training of Lt. White and other deputies. Should Prince instead focus upon the lack of a stand-alone Use of Force policy in the new handbook adopted in 2010, he has failed to show how the lack of such stand-alone policy, or the policy cited, *supra,* adopted by the Sheriff was a deficiency in the training and supervision of Lt. White and Marshall or any other deputy. Clearly, the inadvertent omission of a stand-alone Use of Force policy is not evidence that Sheriff Gaston acted with deliberate indifference to a known or obvious consequence of failing to have a stand-alone policy. Accordingly, summary judgment is appropriate with regard to any claim against Sheriff Gaston based upon supervisory liability.

### ii. Policy or Custom.

Defendants submit that Plaintiff did not suffer a constitutional violation in the instance of his apprehension and arrest, so the Court need not participate in an exercise whether the County Defendants had a policy or custom which was the "moving force" behind any constitutional violation. The inquiry need not happen. However, even assuming for the sake of argument the Court finds that there exists a question of fact as to whether Prince suffered a constitutional violation, Plaintiff still can identify no policy or custom which was the moving force behind such violation in order to impose municipal liability on the County Defendants. The inadvertent omission of a stand-alone Use of Force policy in the Law Enforcement Policies and Procedures Manual does not indicate that the County Defendants placed no emphasis upon limiting the amount of force used

to apprehend and arrest a fleeing suspect. Such position is easily discredited when (1) the alleged perpetrator, Lt. White, is certified by the State of Mississippi and received use of force training at the law enforcement academy and through other training, and for six years during his tenure was subject to the WCSD's old policy, the Code of Conduct which did have a Use of Force policy; (2) the WCSD periodically holds departmental meetings which address all aspects of law enforcement, including use of force, (3) there are provisions in new manual which do address the appropriate use of force, (4) there is no evidence of an identifiable custom of deputies of the County Defendants using excessive force against arrestees; and (5) in particular, there is no evidence whatsoever that Lt. Mack White has ever been accused of using excessive force against any arrestee, detainee or inmate in the custody of the County Defendants. There is simply no "direct causal link" as required by law between any policy, or lack of policy, and the actions of Lt. Mack White on March 16, 2012. Accordingly, any claims of municipal liability against the County Defendants must be dismissed.

### 4. Failure to Provide Adequate Medical Assistance.

Count Nine of the Complaint states a cause of action "for failure to provide adequate medical assistance as required in 42 U.S.C. § 1983." *See* Complaint, ¶51. As stated previously, "Section 1983 does not create substantive rights; rather, it merely provides a remedy for deprivations of rights established elsewhere." *Estate of Manus, et al v. Webster County, Mississippi, et al*, ---F.Supp.----, 2014 WL 1285946 (N.D. Miss. March 31, 2014) at *3 (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Accordingly, Plaintiff's claim that defendants for denial of medical care as alleged is premised upon a statute which provides no substantive rights and such claim should be dismissed.

In order for Prince to prevail on an Eighth Amendment claim for the denial of medical care, he must allege facts demonstrating "deliberate indifference to [his] serious medical needs" which

constituted unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S> 97, 104-05, 97 S.Ct. 285, 291, 50 L.ed 251 (1976). Courts have described deliberate indifference as "subjective recklessness as used in criminal law." *Farmer v Brennan*, 511 U.S. 825, 839-40, 114 S.Ct. 1970, 1980, 128 LEd2d 811 (1994). Prince must prove that the defendant actor "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inferences could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 144 S.Ct. At 1979. Most importantly, however, is that Prince must be within the custody of the Defendants in order to prevail.

In the instant case, when Prince consented to medical treatment, he received treatment. Although Defendants submit that Prince refused medical treatment twice, even Prince acknowledges that he refused medical treatment once by refusing to go with the ambulance personnel to the hospital while at the WCSD. When he did request medical treatment, he was immediately taken to the hospital.

The next morning, the decision was made to release Prince from the charges on his own recognizance. Defendants failure to transport Prince to Jackson for further medical treatment did not violate his constitutional right to medical care. Once Prince was no longer in the custody of Washington County, the Defendants no longer had an obligation to provide him medical treatment. In *Smith v. City of Tupelo, MS*, 2007 WL 2071811 (N.D. Miss. 2007), the plaintiff claimed that his release from jail on the morning before his surgery was effectively an unconstitutional denial of medical care. Judge Davidson found that "the government has no duty to prolong the custody of an inmate so medical care can be provided." *Id.* at *6. In so finding, Judge Davidson said the following:

The government's duty to provide medical treatment to incarcerated

individuals exists because an inmate is unable to obtain treatment of his own volition. See *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Therefore, if the government did not provide treatment a prisoner's need for medical attention would not be met. *DeShaney v. Winnebago County Dept. of Social Serv.*, 489 U.S. 189, 200, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989). The foundation of this duty is based upon the prisoner's inability to seek treatment because of his incarceration. Once the prisoner is released from custody, the rational no longer exists.

*Smith v. City of Tupelo, MS*, 2007 WL 2071811 (N.D. Miss. 2007) at *6.

Further, Judge Davidson noted that "[i]n order to succeed on his claim, Plaintiff would have to show that Defendants, by releasing him from custody, perceived a substantial risk of harm and actually intended that harm occur." *Id.* The record is devoid of any such proof in the case *sub judice*. It should be noted that Prince *was* able to and *did* obtain medical treatment on his own volition. The very day of his release he presented to the University Medical Center and was seen, treated and released. He has not been to a doctor since. Nevertheless, that Prince himself delayed treatment on at least one occasion, was treated the same day he was released from custody, and the lack of any injury from an alleged delay or failure to treat, supports Defendants contention that the cause of action on this basis is without merit and summary judgment should be granted.

**5.    No Vicarious Liability to Washington County, Mississippi under § 1983.**

Count Eight of the Complaint asserts a claim against Washington County, Mississippi "for deprivation by its agents, servants, or employees, including Defendants White, Marshall and John Does 1-10, of the Plaintiff's constitutional rights within the meaning of 42 U.S.C. § 1983."[5] There is no vicarious liability to Washington County, Mississippi simply because Defendants Lt. White

---

[5]By Agreed Order Substituting Parties [Doc. # 12], Washington County, Mississippi was substituted in the place and stead of the Washington County Sheriff's Office and the Washington County Board of Supervisors.

and/or Deputy Marvin Marshall were employees of the WCSD.  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Accordingly, any cause of action under Count Eight should be dismissed.

      **6.**    **Claims under the Mississippi Constitution.**

In Count V of the Complaint, Prince asserts claims arising under the Mississippi Constitution, specifically the "right to be free from punishment without due process, as required by the Constitution of the State of Mississippi."  *See* Complaint, ¶ 38.  Defendants adopt herein their arguments relative to the claims arising under the due process clause of the U. S. Constitution. Because the Mississippi Constitution can grant no greater rights than those guaranteed by the U. S. Constitution, the Court need not perform a separate analysis.  If no cause of action exists under the due process clause of the U. S. Constitution (as submitted herein, infra), then no cause of action can exist under the due process clause of the Mississippi Constitution.

## CONCLUSION

For the reasons set forth above, this Court should grant summary judgment dismissing all claims.

Dated: May 30, 2014.

                                     **Respectfully Submitted,**

                                     **WASHINGTON COUNTY, MISSISSIPPI, SHERIFF MILTON GASTON, in his Official Capacity, LIEUTENANT MACK WHITE, in his individual and official capacity, DEPUTY MARVIN MARSHALL, in his individual and official capacity**

                                     **By: */s/ P. Scott Phillips, Esq.***
                                           **MS Bar No. 4168**

**OF COUNSEL:**

**CAMPBELL DeLONG, LLP**
**Attorney for Defendants**
**923 Washington Avenue**
**P.O. Box 1856**
**Greenville, MS 38702-1856**
**Telephone: (662) 335-6011**
**Facsimile: (662) 334-6407**
**E-mail: sphillips@campbelldelongllp.com**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **May 30, 2014**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document was served this day on all counsel of record listed below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized matter for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Derek L. Hall      derek@dlhattorneys.com

John Michael Duncan      michael@duncankentpllc.com

*/s/ P. Scott Phillips, Esq.*