**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MICHAEL PRINCE, JR.**                                                    **PLAINTIFF**

**v.**                                          **CASE NUMBER: 4:13cv165-SA-JMV**

**WASHINGTON COUNTY, MISSISSIPPI,
SHERIFF MILTON GASTON, In His Official Capacity,
LIEUTENANT MACK WHITE,
In His Individual and Official Capacity,
DEPUTY MARVIN MARSHALL,
In His Individual and Official Capacity, and
JOHN DOES 1-10**                                             **DEFENDANTS**

---

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**COMES NOW,** the Plaintiff, Michael Prince, Jr., by and through counsel, and

submits this, his *Plaintiff's Memorandum of Authorities in Opposition to Defendants'*

*Motion for Summary Judgment*, and in support thereof, would show as follows:

**INTRODUCTION**

The instant action arises out of civil wrongs committed by the various Defendants

against the Plaintiff late in the evening of March 16, 2012 and into the early morning of

March 17, 2012.

On the evening of March 16, 2012, the Plaintiff, Michael Prince, Jr. ("Prince")

was sitting around with friends having some drinks outside his trailer at the Wayne

Pearson Trailer Park.  *See Exhibit A; Deposition of Michael Prince, Jr. at pgs. 10-11.*

Prince, his girlfriend, and several others were simply sitting on his patio and talking.  *Id.*

*at pg. 12.*  The group was doing nothing else, such as listening to music, except talking

amongst one another and enjoying their drinks.  *Id. at pg. 12.*  Obviously, there is nothing

illegal about having drinks with friends, and it should be noted that Prince's intake sheet (attached as Exhibit B) indicates that Prince was not intoxicated, which would render Prince's recollection of events equally, if not more, valid than the recall of Lieutenant White.

It was at this point that Prince heard a gunshot. *Prince Deposition at pg. 12.* Prince and the others went inside. *Id. at pg. 13.* When Prince and the others returned outside, Washington County Sheriff's Deputies had arrived at the trailer park. *Id. at pg. 13.* Prince explained that he believed he had an outstanding warrant of some sort with the City of Greenville, and that he was concerned that the deputies may run his name through their system, and for that reason he chose to hide from the deputies. *Id. at pg. 15.*

Defendants claim that "a person fitting the description of Michael Prince appeared to hide a gun under a trailer." (Defendants' Memorandum in Support at pg. 15). However, this is directly contrary to the signed statements of Irma Johnson and Ashley Augustine. *(See letters attached as Exhibit C and Exhibit D stating that Prince did not have a gun.)* Additionally, Bobbie White testified to the contrary in her deposition.

> Q:     Whom did she (Tekoah Arrington) say she saw put a gun down?
>
> A:     She just said she seen the dark boy that lives in Lot Number 2, and she said he put something down by the step and he came back and got it. . .
>
> Q:     . . . And who lived at Number 2?
>
> A:     In Number 2 was Steven. . .

(There was some confusion on Ms. White's part as to which trailer was

number 2, but she later indicated that she was referencing Steven Johnson's trailer.)

*B. White Deposition at pg. 28.*

Also, when asked about whether or not Prince had a gun:

Q:     Did you see him with a gun?

A:     No.

Q:     Have you ever seen him with a gun?

A:     No.

*B. White Deposition at pg. 23.  (Full text attached as Exhibit E.)*

Additionally, when asked if Prince was armed or if he had recovered a gun in the woods that night, Mack White responded no to both questions.  *M. White Deposition at pgs. 77 and 85.  (Full text attached as Exhibit F.)*

Prince went behind the trailers and into the woods.  *Prince Deposition at pg. 23.* Prince believes that the deputies saw him enter the woods.  *Id. at pg. 23.*  The deputies made their way into the woods and were shining their flashlights around.  *Id. at pg. 30.* Prince heard one of the deputies say "We're going to get his ass."  *Id. at pg. 30.*  Prince remembers being struck in the mouth with a flashlight by an officer.  *Id. at pgs. 31-32.* Prince was not resisting.  *Id. at pg. 32.*  Prince was screaming for help.  *Id. at pg. 35.* Prince stated that the officers got aggressive after shining their flashlights on him.  *Id. at pg. 36.*  Lieutenant Mack White struck Prince in the eye with a flashlight.  *Id. at pg. 46.*

After Prince was handcuffed, he was put in a cop car by a Sheriff's deputy.  *Id. at pg. 64.*  Lieutenant Mack White ("White") drove Prince to the Washington County

Sheriff's Department. *Id. at pg. 65*. Prince was booked. *Id. at pg. 66*. White then took Prince to the Washington County Regional Correctional Facility ("WCRCF") due to the outstanding ticket. *Id. at pg. 67*. WCRCF refused to admit Prince due to his condition (busted eye and broken teeth; *See medical records attached as Exhibit G*). *Prince Deposition at pg. 67*.

Prince was then taken to Delta Regional Medical Center ("DRMC") by Deputy Marvin Marshall. *Id. at pg. 68*. After receiving an X-ray of his eye and being told by DRMC that he would need to go to UMMC in Jackson, Prince was taken back to WCRCF by Marshall. *Id. at pg. 76*. Prince was then taken back to his trailer by Marshall. *Id. at pg. 77*.

Prince's parents then attempted to take Prince to DRMC, but were told the same thing; that Prince needed to be seen at UMMC, so Prince's parents took him to UMMC. *Id. at pgs. 77-78*. Prince saw an eye specialist at UMMC. *Id. at pg. 78*. Prince's eye was swollen shut for a week. *Id. at pg. 80*. Prince's tooth, which had never previously been damaged, chipped off after the assault. *Id. at pg. 86*. Prince missed work for roughly a month due to his injuries. *Id. at pg. 105*.

## THE SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact." A genuine issue of fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of*

*Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001).  In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).  Summary judgment does not allow a court to resolve credibility issues or weigh evidence.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## ARGUMENT

Plaintiff shall address, paragraph-by-paragraph, Defendants' arguments.

### 1. Official Capacity Claims

Plaintiff takes no issue with the substance of Defendants' argument that naming the Defendants in their official capacities is essentially the same as naming Washington County and as such, does not object.  All official capacity claims shall be discussed at length *infra*, and Plaintiff would show that this understanding is merely an effort at judicial economy and in no way constitutes a concession on the part of Plaintiff as to the liability of the County Defendants.

### 2. Claims of Negligence, Gross Negligence, and Reckless Acts

In their brief, Defendants point out that Miss. Code Ann. § 11-46-9(1)(c) provides that no liability shall be had against a government employee due to any act or omission engaged in the performance or execution of duties relating to police or fire protections unless the employee acted in reckless disregard to the safety and well-being of any person not engaged in criminal activity at the time of injury.  *Id.*

Defendants are quick to assume that the factual narrative most favorable to them (which this Court's analysis shall not favor, according to the law) assumes that Prince was *engaged in criminal activity* at the time he was assaulted. Defendants point to Miss. Code Ann. § 97-35-7 in support of their assertion that Prince was "resisting arrest by fleeing and hiding from law enforcement" (*See Memorandum in Support of Motion for Summary Judgment, at pg. 11*).

However, the plain language of each and every subsection of Miss. Code Ann. § 97-35-7 makes it clear that the provisions of that particular law are enacted after a command is given by a police officer. Here, the sworn deposition testimony is clear that the only order given to Prince was something to the effect of "Stop resisting," and that the various depositions leave as to a <u>major dispute as to a material fact</u> whether or not Prince was resisting at all, as opposed to simply being assaulted without reason. The narrative light most favorable to Plaintiff is that he was simply lying in the woods, not engaged in criminal activity. As prescribed by the *Daniels* case above, this is the view from which the Court must draw its inferences in a Motion for Summary Judgment.

Prince says he was not resisting. *Prince Deposition at pg. 32.* Prince further says that he was screaming for help. *Id. at pg. 35.* Lieutenant White claims that Prince tried to flee and that he lost his flashlight and radio while in the woods. *M. White Deposition at pg. 54.* White denies ever striking Prince in the face with "a flashlight," but offers no other explanation for Prince's injuries. *Id. at pg. 73.* Prince's injuries are detailed in the attached medical records as well as Washington County Sheriff's Department's own records. On a document appearing to have been completed by an Officer Johnson on the night of March 16, 2012 in regard to Prince's booking, under item 6, which read "Has

pain, bleeding, trauma, illness, or other symptoms that may need treatment," "pain" and "bleeding" are circled, as is "YES." Additionally, the record notes in the author's scrawl, "swollen left eye, swollen wrist, chest pain, coughing up blood." *(attached hereto)*. No explanation whatsoever for any of these injuries are ever offered by Defendants. The intake record also indicates that Prince was not intoxicated, which again, lends credence and credibility to his version of events in that his recall can not be said to be impeded by any alleged inebriation. *Id.*

Clearly, there are potentially conflicting accounts as to what happened in the woods but what is clear is that Plaintiff was struck in the face by an object by an officer. Obviously, genuine issues as to material facts exist. Additionally, Plaintiff's injuries in and of themselves are evidence of "reckless disregard" on the part of the officer. *(See Code of Conduct Section 12.2 stating that blows to the face and head are never appropriate; Attached as Exhibit H; full text included on page 8 herein)*. Accordingly, the Defendants are not at all immune from the claims of Counts Two and Three, and as such, genuine issues as to material facts which would certainly preclude summary judgment clearly exist.

### 3. Claims Arising Under 42 U.S.C. § 1983

### A. Claims Against Mack White

It should be noted that Plaintiff does not intend to pursue any claims against Marvin Marshall any further, and as such, shall not address any claims as to him herein.

#### a. *Claims Arising Under the Fourth Amendment*

In alleging a violation of the Fourth Amendment prohibition against the use of excessive force, a plaintiff must allege: (1) an injury that (2) resulted directly and only

from the use of force that was excessive to the need, and (3) that the use of force was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

Here, Plaintiff can satisfy all three requirements of *Flores* in that he sustained multiple injuries to his head, face, eyes, and teeth (*See attached medical records.*), that it resulted from the blows inflicted by Defendants (Prince Deposition at *inter alia*, pg. 46; as well as the entirety of the record herein whereby Defendants offer no alternate explanation for the subject injuries, rendering Plaintiff's version of events the only credible narrative), and that the use of force was unreasonable.

The most damning argument that White's use of force was wholly unreasonable is that the very Code of Conduct used by the Washington County Sheriff's Department explains that White's actions were not only unreasonable, but against official policy.

> 12.2   A deputy may use non-deadly force which is reasonably necessary to effect an arrest or to prevent, or attempt to prevent the escape from custody of a person whom he reasonably believes to have committed an offense.  Reasonable force may be used to the extent the deputy reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of non-deadly physical force.  It is the policy of the Washington County Sheriff's Department for all deputies to use only a baton that has been sanctioned by this department.  This baton will be used because it can be taught by qualified instructors.  Instruction classes will be held once a year in the use of this baton.  (Blackjacks, etc. will not be tolerated.)

> B.   Only reasonable use of batons in the subduing of unruly prisoners is permitted by any deputy of the department.  It is a dangerous weapon and if improperly used, may result in death. Baton strikes <u>shall never be directed toward the head of a suspect</u>. Deputies of the Washington County Sheriff's Department shall be required to include in their offense or supplementary report, where a baton or other such weapon is used, stating therein what injury, if any, was sustained by the prisoner and what the exact circumstances were that necessitated the use of such weapon. (Emphasis added.)

*Quoting from the Washington County Sheriff's Department Code of Conduct).*

The reasonable inference can be drawn that "other such weapon" would include all pieces of service equipment used by an officer, and additionally that the provision prohibiting blows to the head extends to all other objects within an officer's control, including flashlights, radios, etc.

Defendants may be quick to point out that the above-referenced handbook was not in effect at the time of the subject incident. However, such an argument leaves Defendants with the argument that no policy at all is better than a policy as damning as the one referenced here. This is, of course, due to the fact that the current handbook is wholly and completely devoid of any "use of force" policy whatsoever. *(See Personnel Manual attached as Exhibit I).* Additionally, both Lieutenant White and Sheriff Gaston admit that the current handbook is devoid of a "use of force policy." *M. White Deposition at pg. 26*; *M. Gaston Deposition at pgs. 25-28. (Full text attached as Exhibit J.)*

Defendants attempt to simply explain away this glaring problem by stating that the exclusion of such a critical section was an "inadvertent omission" (Defendants' Memorandum in Support at pg. 20), and further offering that "there are provisions in the new manual which do address the appropriate use of force." (Defendants' Memorandum in Support at pg. 21). However, no particular examples of such provisions are offered in support of that claim.

In his deposition, Lieutenant White appears to be fairly familiar with the Code of Conduct and additionally explains that longer-tenured deputies, such as himself, have

multiple handbooks.

> Q:     And what do you do to ensure that you're following those policies?
>
> A:     Handbooks.  We have a handbook.
>
> Q:     Handbooks?
>
> A:     Yeah.  I mean a policy and procedure book or manual, rather.
>
> Q:     And do you sometimes get updates on those polices and procedures?
>
> A:     Sometimes do we get updates?
>
> Q:     Um-hum, yeah.
>
> A:     No, sir.  When you first sign on with them, they give you a policy and procedure book.  Since I've been here, I have two policy and procedure books.  See, I got hired under the old sheriff, and it was his policy and procedure book.  Then when the new sheriff took over, he came out with his policy and procedure book.  So I have two.

*Deposition of Mack White at pgs. 18-19.*

> Q:     Okay.  According to your handbook, is striking a detainee in the head ever authorized?
>
> A:     No, sir.

*Deposition of Mack White at pg. 32.*

The following excerpt is from Sheriff Milton Gaston's deposition:

> Q:     Now, those old policies and procedures still apply?
>
> A:     Yes, sir.  They would still apply.  Some of them probably apply to it.  It's basically about some of the same things in it.

*Deposition of Milton Gaston at pg. 22.*

The Court is essentially left with either the new handbook with no hint or mention of "use of force" or the old one which specifically forbids the types of actions Plaintiff complains of in his Complaint. Defendants can't have it both ways.

Defendants then assert that because Prince fled, allegedly was without a shirt, and laid down in the brush, that this is conclusive as to the Defendants' acts of beating a man with flashlights being "objectively reasonable," without any further explanation as to why these conclusory allegations render the Defendants' actions objectively reasonable. (*See Memorandum in Support of Motion for Summary Judgment at pg. 14*). Defendants merely state they "submit that… the acts were not objectively unreasonable in light of the situation faced by Lt. White." *Id.*

It is irrelevant whether [an] officer intended to use more force than was reasonably necessary, or, conversely, whether the officer believed that the force used was not excessive. *Graham v. Connor*, 490 U.S. 386 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

This is a critical analysis. Defendants submit in their brief that even though the handbook originally instituted under Sheriff Gaston contains no "use of force" policy, that Lieutenant White was also trained under the previous administration and under the previous handbook. The previous administration's handbook contained a provision that explained that striking someone with a piece of service equipment is <u>never acceptable, nor are blows to the head</u>. (Emphasis added.) *(See Code of Conduct at pgs. 47-48)*

How then, is it "objectively reasonable" for a Washington County Sheriff's Department officer to commit that very action, when the handbook - the only one that even contained a use of force policy - made it clear that it was never reasonable to strike a person with a piece of service equipment?

The "20/20 vision of hindsight" cautioned against in *Terry* is the exact sort of analysis that Defendants employ. The fact of the matter is that Mack White came upon Prince laying in the woods. (Both of their words; *Prince Deposition at pgs. 23-25*; *M. White Deposition at pgs. 53-54, stating that Prince was lying face down on the ground.*) White alleges Prince *attempted* to flea. Prince says he did not. Regardless, no portion of either narrative would have made the injuries sustained by Prince at the hands of White "objectively reasonable," as blows by items other than batons and never to the head – as has been discussed *infra* and *ad nauseam* – are strictly prohibited. Defendants have attempted to assess the situation in the vacuum of hindsight to justify Lieutenant White's actions. With no further explanation for Prince's injuries than the one he offers, the Court is left with a record that explains that Prince's injuries were inflicted as a result of blunt-force trauma by an instrument handled by Lieutenant White. There is simply no interpretation of the factual scenario, at the time occurring or with the benefit of hindsight, that would allow Lieutenant White to strike Prince in the head, and as such his actions can never be considered "objectively reasonable."

For these reasons, Defendants cannot prevail on their defense of "objective reasonability" and as such, their motion for summary judgment as to this matter should be denied.

Plaintiff acknowledges that the Supreme Court in *Graham v. Connor*, explained that its preference as to an analysis of excessive force between the Fourth Amendment and the Fourteenth Amendment is that the Fourth Amendment provides the better framework and is the more applicable standard. 490 U.S. 386. As such, Plaintiff sees no need to make duplicative arguments as to the liberty and due process interests under the Fourteenth Amendment denied to him by Defendants, and would instead focus his analysis - as above and *infra* - on the "objective reasonableness" standard, which is the prevailing current analysis as to an officer's use of force. *Id.*

### b. *Claims Arising Under the Eighth Amendment*

The standard as to whether an actor's denial of medical treatment to a person constitutes a violation of the Eighth Amendment is "deliberate indifference" to the person's medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Additionally, an actor must know of and disregard an excessive risk to inmate health, and further be aware of the facts from which the inference could be drawn and actually make the inference. *Farmer v. Brennan*, 511 U.S. 825 (1994).

Defendants exhibited deliberate indifference to Plaintiff's medical needs by not having him seen by a doctor right away. It was clear from his intake record (attached hereto) that his face was clearly very battered and that he was coughing up blood. Instead of immediately taking Prince to a hospital, White simply threw him an ice pack. *Prince Deposition at pgs. 65-66.* Only after Prince requested medical treatment was it provided. *M. White Deposition at pg. 84.* Defendants allege that Prince "refused medical treatment," but it is clear from Prince's deposition that he "refused treatment" because he

did not wish to get back in the car with Mack White, who had assaulted him earlier in the night. *Prince Deposition at pg. 72.* Prince feared White.

As to the remaining prongs of the test required by *Estelle*, White clearly knew of and disregarded the health risk, as the severity of Prince's injuries were not only obvious to the naked eye, but also by the fact that the city jail refused to book Prince due to his pathetic condition and patently obvious and severe injuries. *M. White Depositon at pg. 83; Prince Deposition at pgs. 66-67.* This action put White on notice of the severity of Prince's injuries.

Clearly, White was aware of the facts from which the subject inference could be drawn, as he had been with Prince since they met in the woods. This prong of the test is essentially created to shield someone from liability for merely transporting someone who is in poor health. Obviously, White does not fit that bill. White clearly drew the inference as well, as he "noticed that [Prince] did have a swollen eye" and was told that Prince had to be medically cleared before he could be booked, given his condition. *M. White Deposition at pg. 83.*

Taken together, these actions show deliberate indifference on the part of the Defendants as to Prince's health. While Defendants claim that Prince refused medical treatment, the record is clear that he wanted to be treated, but that he was fearful of being transported by White. As such, summary judgment is inappropriate as to this issue and Defendants claim therefore should be denied.

While Plaintiff submits that the attached medical records (broken teeth, injured eyeball, multiple lacerations and bruises) are indicative of both a serious and heinous

injury, the law is clear that a serious injury is not required.

The Plaintiff need not prove a "significant injury," but rather only an "unnecessary and wanton infliction of pain," as long as the force was more than *de minimis*. *Hudson v. McMillian*, 503 U.S. 1 (1992). Bruising, swelling, loosened teeth, and a cracked dental plate were held to be a significant showing [of 'unnecessary and wanton infliction of pain']. *Id.*

The injuries described as displaying an "unnecessary and wanton infliction of pain" in *Hudson* are nearly the exact injuries suffered by Prince. *(See attached medical records.)* Clearly, while Plaintiff would submit that Prince's injuries are definitely significant, that at minimum, an "unnecessary and wanton infliction of pain" has been shown here, as the injuries suffered are nearly identical to the *Hudson* case.

The Sixth Circuit applies a similar, but slightly modified test; one that should prove helpful to this Court's analysis. In determining whether there has been an excessive use of force in violation of the Fourth Amendment, [the] court considers not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence. *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012).

Plaintiff submits that this persuasive authority is useful to this Court's analysis, and would further submit that the medical records contained herein evidence gratuitous violence, as again, blows to the head are never permissible, and that additionally, denial of medical care clearly subjects a person to an unnecessary and gratuitous level of violence.

For the reasons stated above, it is clear that the level of violence imposed upon and the injuries suffered by Plaintiff constitute a violation of his Eighth Amendment rights by the Defendants and as such, summary judgment as to this issue is inappropriate and should be denied.

**B.    Claims Against Sheriff Milton Gaston and Washington County**

   ***a.    Failure to Train***

In order to impose liability on a government entity, - here Sheriff Gaston and the Washington County Sheriff's Department - the plaintiff must establish a constitutional violation by the entity itself.  In a claim based on inadequate training, the plaintiff must show that the entity's lack of proper training amounts to deliberate indifference to the rights of the public who come into contact with the entity's officers; that a deliberate choice was made regarding this lack of training; that it would have been obvious to reasonable decision-makers that this lack of adequate training would result in constitutional violations; and that there was a causal connection between this lack of training and the Plaintiff's injury.  *Canton v. Harris*, 489 U.S. 378 (1989).

As was mentioned earlier, the policy of the Washington County Sheriff's Department must be either that it does not have a "use of force" policy or that the old handbook is still quasi-effective and prohibits blows to the face and head.  Defendants cannot simply have a policy imputed upon them because of what they call an "inadvertent omission" or because it may be their testimony that everyone understood "use of force" whether it is described in their handbook or not.  Defendants can't have it both ways. Either the handbook is a collection of their policies or it isn't.  Defendants make clear that the handbook is what they go by, and that it is their official manual governing their

actions and policies. That very "inadvertent omission" is fatal here. The following excerpt is from Sheriff Milton Gaston's deposition:

> Q:      Okay. So is it fair, then, to say that 2010 policies and procedures supercedes and takes the place of the older ones which [are] contained in [the Code of Conduct]?
>
> A:      Yes, sir.

*Deposition of Milton Gaston at pg. 24.*

Sheriff Gaston further explains that he had next to nothing to do with the creation of the handbook and explained that as to the task of drafting the handbook, he "turned it over to some other people." *Id. at pg. 24.* Gaston could not say how long the handbook had taken to draft. *Id. at pg. 25.* He also could not say when the handbook had been adopted without assistance. *Id. at pg. 26.* When asked if any training sessions on "use of force" had been conducted since the adoption of the current handbook, Gaston responded that there had not been, but that "it's a possibility [that some deputies] went to some type of seminar or training." *Id. at pg. 26.* Gaston couldn't say one way or another.

Gaston's ignorance toward the handbook that he claims contains the official policies and procedures of his sheriff's department is troubling. It is abundantly clear that Sheriff Gaston himself took no part in the training of his deputies, but there is even great confusion as to what actually constitutes the official policies and procedures of the Washington County Sheriff's Department. Gaston's deposition testimony clearly evidences deliberate indifference toward the citizens of Washington County, as he explains that he took no part in the creation of the handbook, and knew next to nothing about it. Gaston's deposition testimony also makes clear that he made a deliberate choice

to not take part in the creation of the handbook, thereby evidencing his indifference toward proper training of his officers. Plaintiff submits that wholly omitting a "use of force" policy from your handbook would obviously lead to constitutional violations by officers, and that this lack of training was the cause of the injuries described herein, as a reasonable person could conclude that no properly trained officer would strike a person on the head. It appears, according to Sheriff Gaston's testimony, that the policy of the Washington County Sheriff's Department as to "use of force" is that they don't have a policy as to "use of force."

As such, Defendants claim for summary judgment as to this issue is inappropriate and should be denied.

### b.    *Policy or Custom*

In order for a Plaintiff to recover from a governmental entity based on policy or custom, a Plaintiff must demonstrate the following: (1) an official policy or custom of which (2) the policy maker can be charged with actual or constructive knowledge and (3) a constitutional violation whose "moving force" is that policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Plaintiff would submit that it is the policy or custom of the Washington County Sheriff's Department to use excessive amounts of force. Plaintiff can point to three such incidents contained in the record of this matter. In addition to the instant claims, Sheriff Gaston and Bobbie White reference other instances in which Washington County Sheriff's Department has been implicated in excessive use of force claims. In response to whether his office has ever been sued over an excessive use of force in the past, he

responds with some information as to a "Merick Cleveland case." *Deposition of Milton Gaston at pg. 12.* He then goes on to explain that the case involved a man being shot by a deputy and that he thinks "they might have settled something on it." *Id. at pg. 13.* Prong two of the *Piotrowski* analysis is satisfied in that Bobbie White testified that she had put the County on notice of the problems at her trailer park. In her deposition, Bobbie White explained that deputies were often at the trailer park and quite abusive to tenants. She explained one occasion wherein a deputy manhandled a female tenant and "told her to get her ass in the house." *Deposition of Bobbie White at pg. 39.*

In fact, Ms. White had much to say about the Washington County Sheriff's Department's indifference toward the tenants of her trailer park. She explains that deputies wouldn't respond to incidents when she called them. *Id. at pg. 40.* She also explained that deputies were sometimes very slow to respond. *Id. at pg. 31.* Ms. White explains that she went so far as to write letters to Sheriff Gaston and to the mayor in an effort to explain the situation at the trailer park and receive help. *Id. at pg. 14.* The letters went unanswered. *Id. at pg. 14.* She proceeded to hand-deliver letters to both Sheriff Gaston and to the mayor. Again, the letters went unanswered. *Id. at pg. 14.* Taken together, these facts describe how the Defendants were put on notice, thus satisfying the notice prong of the *Piotrowski* test. The third prong of the test is also satisfied, in that no reasonable explanation as to White's violence was ever suggested or offered by Defendants (other than summarily concluding that it was "objectively reasonable"), leaving the only possibility that White attacked Prince because he had never been trained under Sheriff Gaston's regime to the contrary.

For these reasons, Defendants defenses' as to the official capacity claims fail and

as such, summary judgment as to these claims is inappropriate and should be denied.

### C. Qualified Immunity Analysis

In their brief, Defendants have claimed virtually limitless enjoyment of qualified immunity. The gravamen of their argument hinges on the standard of "objective reasonability," which has been discussed *infra*.

In evaluating a qualified immunity privilege as to a defendant, the court must determine (1) whether the plaintiff has alleged a violation of a clearly established constitutional right and (2) whether the government official's conduct was objectively reasonable under the law at the time of the incident. *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).

Rather than restating the argument, Plaintiff will simply direct the Court to his previous argument as to the Defendants' conduct being clearly objectively unreasonable, per the provisions of the Code of Conduct. Plaintiff submits that his Complaint is sufficient in its allegations as to violations of clearly established constitutional rights.

Accordingly, Defendants shall not enjoy qualified immunity in this matter and summary judgment as to this issue is inappropriate and should be denied.

### 4. Failure To Provide Adequate Medical Assistance

In their brief, Defendants attempt to dismiss Count Nine of Plaintiff's Complaint by arguing that § 1983 does not create substantive rights, but rather protects against the deprivation of rights established elsewhere. (Defendants' Memorandum at pg. 21).

Ostensibly, Defendants present their argument under the premise that Plaintiff

alleges a constitutional right to medial assistance. This is not Plaintiff's allegation. Count Nine of the Complaint alleges violations of Plaintiff's right to liberty as to healthcare decisions and freedom from cruel or unusual punishment, as provided by the Eighth Amendment.

Deputies clearly displayed "deliberate indifference" to Prince's medical needs. Arguments as to this point and the Eighth Amendment have been discussed *infra*. Plaintiff hereby adopts and incorporates those arguments.

### 5.    Vicarious Liability to Washington County Under § 1983

Plaintiff appreciates Defendants' argument as to the premise and availability of vicarious liability under 42 U.S.C. § 1983. *Monell v. New York City Deptartment of Social Services*, 436 U.S. 658, 691 (1978). However, § 1983 does provide liability to a governmental entity under the "official municipal policy" doctrine, in that the actions of employees carried out as part of an "official municipal policy" can subject a governmental entity to liability for the actions of its employees. *Connick v. Thompson*, 563 U.S. ___, 131 S.Ct. 1350 (2011). Plaintiff submits that the conduct of Sheriff Gaston and Washington County exhibited an official policy of indifference toward citizens, as discussed *infra*, and hereby adopts and incorporates his previous argument to that position.

### 6.    Claims Under the Mississippi Constitution

Plaintiff hereby adopts and incorporates his argument as to all points relevant to a federal constitutional analysis, and applies them to all arguments relevant to a Mississippi

constitution and state law claim analysis. As such, Plaintiff submits that since all federal claims herein should remain, all state law claims should remain and that this Court should maintain jurisdiction over the same.

## CONCLUSION

For the reasons stated above, it is clear that summary judgment is inappropriate as to any and all claims referenced herein, in that genuine issues as to serious and material facts do exist, as required by *Celotex* and its progeny, and that as such, Defendants' Motion for Summary Judgment should be summarily denied.

**RESPECTFULLY SUBMITTED,** this the 30th day of June 2014.

**MICHAEL PRINCE, JR.**

/s/ Derek L. Hall
BY: DEREK L. HALL

Derek L. Hall (MSB# 10194)
DEREK L. HALL, PLLC
1911 Dunbarton Drive
Jackson, Mississippi 39216
Telephone: (601) 981-4450
Facsimile: (601) 981-4717
Email: derek@dlhattorneys.com
Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Derek L. Hall, do hereby certify that I have this day filed a true and correct copy of the foregoing document with the Clerk of the Court via the CM/ECF electronic filing system, which sent electronic notice of the same to the following:

Scott Phillips, Esq. - sphillips@campbelldelongllp.com

Andrew Tominello, Esq. - dtominello@campbelldelongllp.com

**SO CERTIFIED** this the 30th day of June 2014.

/s/ Derek L. Hall
DEREK L. HALL